CIACCIO, Judge.
The Louisiana Department of Public Safety and Corrections appeals from a trial court judgment, reversing a decision of the administrative law judge suspending the driver’s license of plaintiff, Robert F. Scott, II. We reverse.
Following a traffic stop, plaintiff was arrested and charged with driving while intoxicated, a violation of R.S. 14:98. He voluntarily submitted to a blood alcohol test administered by the New Orleans Police Department using the Intoxilyzer 5000, a state approved testing apparatus. The test registered plaintiff’s blood alcohol level at .144 percent, a reading above the legal intoxication limit of .10 percent. Based on the test result and pursuant to R.S. 32:667, the arresting officer seized plaintiff’s driver’s license, issued him a temporary license for a period of thirty days and provided him with official notice that he had ten days from the date of his arrest to make' written request to the Department of Public Safety and Corrections for an administrative hearing.
Plaintiff requested an administrative hearing which was held on August 28, 1991. Following the hearing, the administrative law judge upheld the suspension of plaintiff’s license and plaintiff appealed to the district court.
The district court judge reversed the administrative law judge’s decision. In his reasons for judgment, the trial judge stated that notice given by the Department of Public Safety and Corrections relevant to the administrative hearing was defective under R.S. 49:955 B(4), as it failed to include a short statement of the matters asserted. The trial judge also found that regulations adopted by the Department in July of 1991 for approval of the instrument used to conduct blood alcohol analysis by breath sampling were not in effect on the date of plaintiff’s arrest and, therefore, the test result evidencing plaintiff’s blood alcohol level was improperly admitted at the hearing.
As its first assignment of error, the Department argues the trial judge erred in finding that the notice of the administrative hearing given to plaintiff failed to comply with R.S. 49:955 B(4).
R.S. 49:955(A) and (B) under the Administrative Procedure Act provide:
Sec. 955. Adjudication; notice; hearing; records
*252 A. In an adjudication, all parties who do not waive their rights shall be afforded an opportunity for hearing after reasonable notice.
B. The notice shall include:
(1) A statement of time, place, and nature of the hearing;
(2) A statement of the legal authority and jurisdiction under which the hearing is to be held;
(3) A reference to the particular sections of the statutes and rules involved;
(4) A short and plain statement of the matters asserted.
If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved. Thereafter, upon application, a more definite and detailed statement shall be furnished.
In the instant case, the standard notice form given to plaintiff by the Department dated August 1, 1991 specifically stated the following:
A hearing has been scheduled for you with our Hearing Officer, James McCullough, at the Department of Public Safety Building, Legal Section, 3842 Airline Highway in Metairie on Wednesday, August 28,1991, at 10:30 a.m. This hearing is being conducted under the authority of R.S. 49:951 et seq. of the Louisiana Administrative Procedures Act.
The matter(s) asserted is plaintiff’s violation of the below referenced statute(s).
It then lists the specific statute violated as:
[X] R.S. 32:661 et seq. — Failing Chemical Test for Intoxication on 6-15-91
The notice clearly sets forth the elements required by R.S. 49:955 B. For the trial judge to find otherwise, was clearly erroneous.
The Department of Public Safety and Corrections also argues on appeal that the trial judge erred in finding that the State did not have in effect at the time of plaintiff’s arrest regulations approving the use of the Intoxilyzer 5000 to conduct breath analysis testing for blood alcohol levels.
The trial judge concluded that the results from plaintiff's blood test were not admissible at the hearing, as the regulations adopted by the State in July, 1991 approving the use of the Intoxilyzer 5000 did not apply retroactively to the date of plaintiff’s arrest. However, the trial judge failed to consider that the State had in effect at the time of plaintiff’s arrest regulations approving the use of the Intoxilyzer 5000. Specifically, as set forth in Louisiana Register, Volume 14, Number 7, July 20, 1988, the State regulation providing for approval of instrumentation by the Department of Public Safety for conducting breath analysis states:
Title 55. Public Safety, Part 1. State Police Chapter 5. Breath and Blood Alcohol Analysis, Methods and Techniques Subchapter A. Analysis of Breath Section 501. Approval of Instruments to Conduct Breath Alcohol Analysis
A. After the Louisiana Department of Public Safety and Corrections has approved a prototype breath testing device as an acceptable model for chemical analysis in breath alcohol testing it shall be necessary for each individual instrument of the approved model to be inspected and approved for use by the Office of State Police. Applied Technology Unit and an instrument certification form shall be maintained for each individual instrument in the Applied Technology Unit....
B. Approval of Instrumentation. The following is the instrument approved by the Louisiana Department of Public Safety and Corrections, the Office of State Police. Applied Technology Unit for analysis of breath specimens for the determination of the alcoholic contents therein.
1. Intoxilyzer 5000, manufactured by C.M.I. of Minturn, Colorado and distributed by Federal Signal Corporation of Chicago, Illinois.
Plaintiff argues on appeal that the regulation promulgated on July 20, 1988 in the *253 Louisiana Register is ambiguous, as it provides no correlation between the use of the breath analysis test and a determination of the blood alcohol content of an individual. We disagree.
R.S. 32:661 et seq., also known as the Implied Consent Law, specifically provides that “[a]ny person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent, subject to the provisions of R.S. 32:662, to a chemical test or tests of his blood, breath, urine or the bodily substance for the purpose of determining the alcoholic content of his blood....” Based on the statute, it is clear that the legislature recognized and intended that not only blood tests, but test of other bodily substances, be used by the Department of Safety and Corrections in determining the blood alcohol content of a person. In light of this, we do not find that the regulation in effect at the time of plaintiffs arrest was ambiguous.
At the hearing, all certifications of the Intoxilyzer 5000 and the operator administering the test were introduced into evidence, as were the results from plaintiffs breath test. Because the State’s regulations approving the use of the Intoxilyzer 5000 were in effect at the time of plaintiffs arrest and the evidence clearly indicated all certifications were valid and the test properly administered, the test result evidencing plaintiffs blood alcohol content at .144 percent was properly admissible. We conclude the trial judge erred in holding otherwise.
Accordingly, for the above reasons, the judgment of the trial court is reversed and set aside. The judgment of the administrative law judge affirming the suspension of Robert F. Scott, II’s driver’s license by the Louisiana Department of Public Safety and Corrections for a period of 90 days is reinstated.

REVERSED.